SAME CASE.—APPLICATION FOR A RE-HEARING.

T. SLIDELL, for a re-hearing :—The rule has, in this case, been recognized, that in a sale where there is no fraud, nor even a suspicion of it on the part of the vendor, he is answerable to the vendee, according to the difference of value in a foreign market, selected by the vendee, and not designated in the contract of sale. This is a most important subject. The principle, it is believed, is new in our jurisprudence ; and it is hoped, that the court will not, in view of the immense commercial transactions of our State, deem its reconsideration an idle expenditure of time.

In the case of *Brown* v. *Duplantier,* Judge MARTIN adopts the standard of the place of contract. " It appears to us," says he, " that the only measure of damages is, the difference in the price given, and that which would have been given, had there been no deception in the bales." 1 Mart. N. S. 321. At page 318 of the same case, he observes : " Whether a vendor, who has a deceit practised on him in the sale, gain or lose by the subsequent sale of the thing, his right to the action, *quanti minoris,* remains perfectly the same. This subsequent sale is his own act. It could not place his vendor in a worse situation, neither do we think it may place him in a better. The second sale is at the first vendor's risk ; he is not bound to account for any part of the profits he makes thereby, as he could not claim a compensation for any loss resulting from it. The *excess of price paid* is, in the hands of the first vendor, money, which, *ex æquo et bono,* he is bound to refund—money had and received to his vendee's use ; the latter has the right to call it out of the former's hands, and this right is independent of any posterior act which may render the purchase beneficial or burdensome, in a greater or less degree."

" Hence, in this case, we find the reduction awarded by the court to be the difference between fourteen cents, and eleven cents per pound ; in other words, the difference in value in New Orleans." Ibid. 320. What are the advantages of this standard ?

I. It is more certain. It is certain as to time—it is the time of the sale itself. It is certain as to the place—the place of the sale itself. Each contracting party knows at the moment of the contract, with certainty, the character of his duty or his responsibility. Vendor and vendee have both before their eyes, in the market of the day and place, the standard of reimbursement, if it should turn out that the article is not what the one honestly supposed he was selling, and the other that he was purchasing.

Not so, where the other standard is adopted. In transactions of this sort, the buyer does not disclose his market, nor the time at which he proposes to sell. He, in truth, has, perhaps, no fixed determination on the subject, and if he had, would not communicate it to the vendor, How, then, is either party to know the extent of the vendor's future responsibility ? The purchaser may ship to New York, to Havre, to Boston, to Liverpool, or to Amsterdam. When the cotton has arrived at the foreign port, he may sell at once, or defer the sale. All these matters are left at the buyer's discretion. Great fluctuations, too, may occur in the market selected, in the relative prices of an article such as it was supposed to be, and an article such as it really was.

II. There is equality in the standard of the domestic market at the date of the sale, because both know it, and neither has any choice ; but there is a want of equality in the rule recognized by the present decision. The seller is placed wholly in the power, and at the discretion of the buyer. Is this just, where both are in good faith ? where dishonesty and intentional deceit, are not only not proven, but are expressly negatived by the opinion of the court ?

Lastly—It is respectfully submitted, that interest is not recoverable—the claim is purely unliquidated.

BULLARD, J. A re-hearing is asked in this case, upon the supposition, on the part of the counsel for the defendants, that we have, in the opinion first pronounced, sanctioned a deviation from the rule laid down in the case of *Brown* v. *Duplantier*, 1 Mart. N. S.

318.    That case, and the one which now engages our attention, are very similar.    In both cases, the deception in packing was discovered in the foreign market.    In the case of *Brown* v. *Duplantier*, it was found that the cotton, on the exterior of the bales, was worth two pence per pound more than that it covered.    The court said, that the only measure of damages is the difference between the price given, and that which would have been given, had there been no deception in the bales.    But the principal point upon which that case turned was, whether a purchaser, who had parted with the thing, could maintain the action, *quanti minoris*, which was solved affirmatively.    In the present case, both parties acquiesced in that part of the Judge's charge in which he told the jury, that if the goods did not correspond with the contract, by reason of some defect, or vice not known to the vendee at the time of the delivery and acceptance of them, he is entitled, where there is no fraud, to recover the difference between the price paid and the value of the goods, as affected with their defects and vices, existing at the time and place of delivery.    The court added, that the expenses necessarily incurred at the foreign port, to which the vendee ships the goods, in consequence of the difference in quality, may be assessed by the jury, on account of the warranty which our law implies in every sale.    This part of the charge was excepted to by the defendants' counsel ; but we held it to be correct ; nor do we now see any good reason for thinking otherwise.    The expense attending a more thorough examination of the cotton, in consequence of the discovery that it had been falsely packed, with a view to ascertain the proportion of trash packed among good cotton, is a direct loss occasioned to the purchaser by the false packing, and which, we think him entitled to recover back.    Nearly all the cotton sold in this market is destined for exportation, either coastwise, or to foreign countries.    It is sold here according to samples drawn from the outside of the bales, and the discovery of frauds in baling the articles, is generally made, when the cotton is, or is about to be, sold for consumption.    It is difficult, therefore, to apply literally the rule contended for by the counsel for the appellants ; but after all, there cannot be a great difference between the relative value of

gin-trash, and merchantable cotton, here and in Liverpool. The whole was left to the jury.

> *Re-hearing refused.*